O’Connor, C.J.,
dissenting.
{¶ 37} I dissent because the majority ignores a long-standing, bright-line rule: “Unfounded attacks against the integrity of the judiciary require an actual suspension from the practice of law.” Disciplinary Counsel v. Gardner, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, ¶ 36, citing Disciplinary Counsel v. West, 85 Ohio St.3d 5, 706 N.E.2d 760 (1999), and Columbus Bar Assn. v. Hartwell, 35 Ohio St.3d 258, 520 N.E.2d 226 (1988).
{¶ 38} For that reason, I would impose six months’ actual suspension, as recommended by the board.

The relevance of the affidavits of disqualification

{¶ 39} As a threshold issue, the majority should clarify that Shimko’s affidavit-of-disqualification filings are relevant only for purposes of providing context. In those proceedings, it was determined that Shimko’s allegations against Markus *554 were “frivolous” and “unsubstantiated.” Even so, the content of Shimko’s affidavits of disqualification is not a basis for his discipline. Rather, the board independently reviewed Shimko’s allegations — made elsewhere — and concluded that his statements were unfounded.
{¶ 40} Ohio’s statutory affidavit-of-disqualification process authorizes the removal of a judge from a ease if a party or attorney can prove that the judge has (1) an interest in the litigation or (2) a bias or prejudice for or against a party or counsel. R.C. 2501.13 (appellate judges), 2701.03 (common pleas judges), 2101.39 (probate judges), and 2701.031 (municipal and county judges).
{¶ 41} Three times, Shimko availed himself of the affidavit-of-disqualification process, seeking Markus’s removal from the case. Three times, Shimko was unsuccessful.
{¶ 42} The board expressly held that Shimko’s first filing did not constitute a violation of the disciplinary rules. Board report at ¶ 33. It did not explicitly reach the issue of whether the second and third filings constituted violations, but it did make clear that its findings that Shimko violated the rules were not based on any of his affidavit-of-disqualification filings. Id. at ¶ 28. In doing so, it emphasized that the affidavit-of-disqualification process is the “proper forum” “to allege violations of judicial officers.” Id.
{¶ 43} The majority purports to accept the board’s findings but also concludes that an actual suspension is not required, in part because “ ‘[attorneys should be free to challenge, in appropriate legal proceedings, a court’s perceived partiality without the court misconstruing such a challenge as an assault on the integrity of the court.’ ” (Emphasis added.) Majority opinion at ¶ 32, quoting United States v. Brown, 72 F.3d 25, 29 (5th Cir.1995).
{¶ 44} I agree with the board that the affidavit-of-disqualification procedure is the appropriate legal proceeding through which attorneys may pursue claims of judicial bias. And Shimko was permitted considerable latitude in that context. Because Shimko is not being disciplined on that basis, the majority’s reliance on the Fifth Circuit’s opinion in Brown is misplaced.

Actual suspension is required

{¶ 45} The majority concedes that the board’s recommendation for six months’ actual suspension “was consistent with this court’s holding in Gardner.” Majority opinion at ¶ 20. Yet it reaches a different result by relying primarily on Justice Pfeifer’s dissenting opinion in Gardner, which attracted not a single vote other than Justice Pfeifer’s.
{¶ 46} In Gardner, we rejected the board’s recommendation to impose a stayed suspension from the practice of law. Gardner, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, at ¶ 12. Gardner had been representing a criminal defendant on *555 appeal. The appellate court issued a decision in favor of the prosecution. Gardner filed a motion for reconsideration in which he accused the panel of being dishonest and ignoring well-established law. Among other things, he accused the panel of being “results driven.” Id. at ¶ 3.
{¶ 47} Facing discipline, Gardner stipulated that by making the remarks, he engaged in undignified or discourteous conduct that was degrading to a tribunal, in violation of former DR T — 106(C)(6). But he contested the allegation that he had knowingly made a false accusation about a judge in violation of former DR 8-102(B). The board disagreed and found that clear and convincing evidence proved that he had. Id. at ¶ 12.
{¶ 48} We adopted those findings but held that Gardner’s license had to be suspended because, as a matter of course, “[ujnfounded attacks against the integrity of the judiciary require an actual suspension from the practice of law.” Id. at ¶ 36, citing West, 85 Ohio St.3d 5, 706 N.E.2d 760, and Hartwell, 35 Ohio St.3d 258, 520 N.E.2d 226.
{¶ 49} In so holding, we explained that false allegations about a judicial officer that are made in court filings are especially egregious. Id. at ¶ 22. “A courtroom is not a forum for personal or political grandstanding, and the attorneys who practice in it ‘possess, and are perceived by the public as possessing, special knowledge of the workings of the judicial branch of government.’ ” Id., quoting State ex rel. Oklahoma Bar Assn. v. Porter, 766 P.2d 958, 969 (Okla.1988). Therefore, “[(lawyers’ statements made during court proceedings are ‘likely to be received as especially authoritative.’ ” Id., quoting Gentile v. Nevada State Bar, 501 U.S. 1030, 1074, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991).
{¶ 50} Notably, Justice Pfeifer disagreed with that judgment. He concluded, singularly, that Gardner’s motion for reconsideration, “while a public document, would receive about as much scrutiny from the public if it were written on the wind.” Id. at ¶ 43 (Pfeifer, J., dissenting). He agreed with Gardner that a public reprimand would have been sufficient, “especially given the virtually nonpublic release of his comments.” Id. at ¶ 45.
{¶ 51} Similarly here, the majority refuses to impose an actual suspension, as required by Gardner, and explains that its refusal “is largely based upon the fact that the statements in this case, although made in ‘a public document, would receive about as much scrutiny from the public if [they] were written on the wind.’ ” Majority opinion at ¶ 33, quoting Gardner at ¶ 43 (Pfeifer, J., dissenting).
{¶ 52} Moreover, the majority does damage to the bright-line Gardner rule by waxing poetic about the “fine line between vigorous advocacy on behalf of one’s client and improper conduct; identifying that line is an inexact science.” Majority opinion at ¶ 34. I do not agree that the line is so fine.
*556 Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Senior Assistant Disciplinary Counsel, for relator.
Richard C. Alkire Co., L.P.A., Richard C. Alkire, and Dean Nieding, for respondent.
{¶ 53} Attorneys must conform their behavior to what is reasonable, not what is perfect. See Gardner at ¶ 30. “Lawyers may freely voice criticisms supported by a reasonable factual basis even if they turn out to be mistaken.” Id. What we require of attorneys in this context is not unique: “The court room is not a place for groundless assertions, whatever their nature.” In re Cobb, 445 Mass. 452, 473, 838 N.E.2d 1197 (2005).
{¶ 54} Nor am I persuaded by the majority’s attempt to distinguish Gardner. Both Gardner and Shimko made false statements about a judicial officer. Both attorneys made the relevant statements in court filings. Both represented that they subjectively believed their statements.
{¶ 55} We imposed an actual suspension upon Gardner even though he had no history of discipline and even though he had apologized for the manner in which he expressed his frustration. He conceded that he had behaved neither appropriately nor professionally.
{¶ 56} In contrast, Shimko has a history of discipline. In 2009, we publicly reprimanded him. Disciplinary Counsel v. Shimko, 124 Ohio St.3d 1201, 2009-Ohio-6879, 918 N.E.2d 1007. And before us now, he shows no contrition.

Conclusion

{¶ 57} Deference to an established majority opinion, despite an individual judge’s disagreement with the opinion, is part of the court’s rich tradition of adherence to stare decisis. See, e.g., Shay v. Shay, 113 Ohio St.3d 172, 2007-Ohio-1384, 863 N.E.2d 591, ¶ 27, quoting Taylor v. Natl. Group of Cos., Inc., 65 Ohio St.3d 482, 483, 605 N.E.2d 45 (1992) (Holmes, J., concurring). I am confounded by the majority’s willingness to so readily disregard Gardner.
{¶ 58} As the majority conspicuously explained, “The board’s finding was consistent with this court’s holding in Gardner.” Majority opinion at ¶ 20. I wholeheartedly agree. For that reason, I would impose six months’ actual suspension, as recommended by the board.
Lanzinger and McGee Brown, JJ., concur in the foregoing opinion.