AKRON BAR ASSOCIATION *v.* SHENISE.

[Cite as *Akron Bar Assn. v. Shenise,* 143 Ohio St.3d 134, 2015-Ohio-1548.]

(No. 2014–1388—Submitted January 13, 2015—Decided April 29, 2015.)

**Per Curiam.**

{¶ 1} Respondent, Larry Dean Shenise of Tallmadge, Ohio, Attorney Registration No. 0068461, was admitted to the practice of law in Ohio in 1997.

{¶ 2} On June 10, 2013, a probable-cause panel of the Board of Commissioners on Grievances and Discipline[1] certified a three-count complaint against Shenise to the board, alleging that he had committed multiple violations of the Rules of Professional Conduct by failing to advise two clients that he did not carry professional liability insurance, failing to adequately advise those clients about their case and the consequences of his failure to respond to various motions and comply with court orders, and making false statements to a local newspaper reporter that were degrading to a tribunal. In his answer, Shenise admitted many of the factual allegations in the complaint but denied that his conduct violated the Rules of Professional Conduct.

{¶ 3} The panel conducted a hearing and heard testimony from nine witnesses, including Shenise, the affected clients, and Judge Paul Gallagher. Later, the

---

1. Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

panel issued a report making findings of fact, concluding that Shenise violated nine Rules of Professional Conduct, and recommending that he be suspended from the practice of law for two years, all stayed on conditions. In a separate entry, the panel unanimously dismissed eight alleged violations that it found relator had failed to prove by clear and convincing evidence. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. Shenise objects to the board's findings of fact and misconduct and argues that the recommended sanction is too harsh.

{¶ 4} We adopt the board's findings of fact and misconduct with respect to Counts I (professional liability insurance) and II (incompetence, neglect, and failure to communicate). We find, however, that Shenise's statements to an *Akron Beacon Journal* reporter to the effect that he had not received notice of a contempt hearing or a telephone call from the court before a warrant was issued against his client were not degrading to the tribunal. Therefore, we sustain Shenise's objections in part, dismiss the alleged violation of Prof.Cond.R. 3.5(a) (prohibiting a lawyer from engaging in undignified or discourteous conduct that is degrading to a tribunal), and agree that a public reprimand is the appropriate sanction for his misconduct.

## Misconduct

### Count I—Professional Liability Insurance

{¶ 5} In its complaint, relator alleged that Shenise allowed his professional liability insurance to lapse and failed to advise his clients and obtain a written acknowledgment of this fact. Shenise admitted the truth of those allegations in his answer and in his testimony, and the board found that he violated Prof. Cond.R. 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional liability insurance and obtain a signed acknowledgment of that notice from the client). We adopt these findings of fact and misconduct.

### Count II—Incompetence, Neglect, and Failure to Communicate

{¶ 6} William Little stopped paying rent on a ten-year lease after he attempted to exercise his option to purchase the property and the lessor was unable to transfer clear title. William retained Shenise to defend him and his father, Leonard, who had cosigned the lease, against the resulting eviction claim filed in the Akron Municipal Court and to pursue a counterclaim for fraud and damages arising from the lessor's breach of contract. Because their counterclaim sought damages in excess of the municipal court's jurisdiction, the case was transferred to the Summit County Court of Common Pleas and assigned to Judge Paul Gallagher.

{¶ 7} Judge Gallagher permitted an assignee of the first mortgage on the leased premises to intervene in the action, bifurcated the trial to separately address assignee's claim for past and future rents and the Littles' counterclaim for damages, and ordered that if rent was paid, it was to be escrowed with the court. Shenise did not oppose the assignee's motions. The court later granted the assignee's motion for summary judgment and issued a judgment against the Littles for $114,345. The assignee moved to declare the summary judgment a final, appealable order and served Shenise with a notice to take the Littles' depositions and a request for production of financial documents. The board found that Shenise did not respond to the motion, the deposition notice, or a subsequent motion to compel discovery. It also found that he failed to advise his clients that they were required to make themselves available for deposition and to produce financial documents, or that the court had ordered them to reimburse the assignee $410 for its legal fees. Although Shenise attempted to appeal the final judgment, his appeal was dismissed as untimely.

{¶ 8} On March 17, 2011, Judge Gallagher issued an order to show cause why the Littles should not be held in contempt for their failure to abide by the court's prior orders. Neither Shenise nor the Littles appeared at the March 30, 2011 hearing. Shenise testified that he did not receive the show-cause order or a voicemail message reportedly left by the judge's assistant on the day of the hearing. Shenise also offered the corroborating testimony of a colleague who was receiving and processing Shenise's mail at that time, but the board did not find that evidence to be credible. Instead, the board found that Shenise chose to consciously ignore the motion for contempt, because he knew that Leonard had filed for bankruptcy on March 21, 2011, and believed that the civil matter would be automatically stayed.

{¶ 9} Judge Gallagher issued bench warrants for William and Leonard for their failure to appear at the show-cause hearing on March 30. Although copies of those orders (and a subsequent nunc pro tunc order correcting a mailing address for one of the Littles) were sent to Shenise, he denied having seen them. When Leonard was involved in a minor automobile accident the following January, the investigating officer discovered the warrant. Leonard was handcuffed and taken to jail, though Judge Gallagher soon released him. Ultimately, Judge Gallagher dismissed the contempt charges, finding that the Littles were not given notice of the hearing, and declined to impose sanctions on Shenise for his failure to appear.

{¶ 10} The board found that the conduct summarized above violated Prof. Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.2 (requiring a lawyer to consult with the client and abide by the client's decisions regarding the means to pursue the objectives of the representation), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client),

1.4(a)(1) (requiring a lawyer to inform the client of any decision or circumstance with respect to which the client's informed consent is required), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation), and 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal).

{¶ 11} Shenise objects, contending that relator failed to prove the alleged violations dealing with client communication by clear and convincing evidence. He argues that he had frank discussions with his clients throughout the proceedings. Shenise admitted, however, that he did not discuss the postjudgment issues with Leonard, believing that his representation had come to an end when Leonard retained bankruptcy counsel, though Shenise did not move to withdraw as Leonard's counsel in the eviction matter. For that reason, the board concluded that he retained the responsibility to monitor the outcome of the motion for contempt and to take appropriate steps to protect Leonard's interests.

{¶ 12} William's testimony at the panel hearing was contradictory at times. It is evident, however, that the panel assigned greater weight to William's testimony about the things that were not brought to his attention. And because the record does not weigh heavily against those findings, we defer to the panel's credibility determinations. *See Disciplinary Counsel v. Heiland,* 116 Ohio St.3d 521, 2008-Ohio-91, 880 N.E.2d 467, ¶ 39, citing *Cincinnati Bar Assn. v. Statzer,* 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8.

{¶ 13} Shenise also challenges the panel's exclusion of an expert witness he called to testify regarding the automatic bankruptcy stay. We review a decision on the admission or exclusion of expert-witness testimony under an abuse-of-discretion standard. *Disciplinary Counsel v. Gaul,* 127 Ohio St.3d 16, 2010-Ohio-4831, 936 N.E.2d 28, ¶ 49. The panel in this case excluded the testimony based on its belief that the expert would not have provided information relevant to the issues of the case. This is not an abuse of discretion, because the panel was capable of interpreting and applying the Rules of Professional Conduct without the proffered expert's testimony. We therefore overrule Shenise's objections in this regard and adopt the board's findings that his conduct violated Prof.Cond.R. 1.1, 1.2, 1.3, 1.4(a)(1), 1.4(a)(3), 1.4(b), and 3.4(c).

### Count III—Statements to the Media

{¶ 14} A journalist from the *Akron Beacon Journal* learned of Leonard's arrest and interviewed him and Shenise. He reported that Shenise made a number of comments to the effect that (1) no one had advised him or his client of the judge's order, (2) no one from Judge Gallagher's court notified him by mail or phone of the March contempt hearing, and (3) the court did not send him notice

of the arrest warrants issued against his clients. He also quoted Shenise as having said, "If we would have known, we would have been there. But they never bothered to say 'Hey, you're supposed to be here for a hearing. We're going to issue warrants for your clients if you don't appear,'" and "They didn't do anything. I would have thought the court would have the courtesy to say 'Hey, you're supposed to be here.'" Shenise admitted to making all the statements attributed to him, except that he denied telling the reporter that Judge Gallagher failed to notify him of the hearing.

{¶ 15} The board found that at the time of the interview, Shenise believed that he had not been notified of the hearing and expressed what he believed to be the true facts. It concluded that viewed in their entirety, Shenise's comments implied that Judge Gallagher acted impetuously and in a heavy-handed manner in dealing with 80–year–old Leonard Little. Believing that the comments were degrading to Judge Gallagher and his staff, the board found that they violated Prof.Cond.R. 3.5(a)(6) (prohibiting a lawyer from engaging in undignified or discourteous conduct that is degrading to a tribunal).

{¶ 16} Shenise objects, arguing that he never accused the court of failing to mail the relevant notices and that unlike other cases in which we have found violations of Prof.Cond.R. 3.5(a)(6) or the analogous provision of former DR 7–106(C)(6), his comments did not involve a direct attack on a judge's integrity. *See, e.g., Disciplinary Counsel v. Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425; *Disciplinary Counsel v. Grimes*, 66 Ohio St.3d 607, 614 N.E.2d 740 (1993); and *Akron Bar Assn. v. DiCato*, 130 Ohio St.3d 394, 2011-Ohio-5796, 958 N.E.2d 938.

{¶ 17} In *Gardner*, we noted that the Supreme Court of the United States has held that while attorneys may be "'subject to ethical restrictions on speech to which an ordinary citizen would not be,'" *Gardner* at ¶ 14, quoting *Gentile v. Nevada State Bar*, 501 U.S. 1030, 1071, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991), their speech may be sanctioned only if it is "highly likely to obstruct or prejudice the administration of justice," *id.*

{¶ 18} Shenise's comments are little more than a statement that he did not receive notice of a hearing by mail or telephone and that if he had received such notice, he would have appeared.

{¶ 19} On these facts, we cannot find that Shenise's statements to the *Akron Beacon Journal* reporter were highly likely to obstruct or prejudice the administration of justice. Therefore, we sustain Shenise's objection and dismiss the alleged violation of Prof.Cond.R. 3.5(a)(6).

## Sanction

{¶ 20} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions

imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc. Reg. 10(B).[2]

{¶ 21} The board found that three aggravating factors are present: a pattern of misconduct, Shenise's efforts to blame both the Littles and Leonard's bankruptcy attorney for their legal misfortunes, and the Littles' vulnerability, given their education and inexperience with the legal system. *See* BCGD Proc.Reg. 10(B)(1)(c), (g), and (h).

{¶ 22} As mitigating factors, the board found that Shenise has no prior disciplinary record, did not act with a dishonest or selfish motive, cooperated throughout the disciplinary process, and enjoys a good professional reputation apart from the charged misconduct. *See* BCGD Proc.Reg. 10(B)(2)(a), (b), (d), and (e).

{¶ 23} The board examined the sanctions that this court has imposed for neglect and related conduct in several cases and recommends that we impose a two-year suspension, all stayed on conditions. Shenise objects and argues that the recommended sanction is not proportionate to his misconduct. We agree.

{¶ 24} The primary purpose of the disciplinary process is not to punish the offender but to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship. *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10. Although Shenise engaged in a pattern of misconduct, it occurred in a single case and arose from his erroneous belief that his clients' bankruptcy filings were imminent and that the anticipated bankruptcy stay would obviate the need for him to take further action.

{¶ 25} In *Columbus Bar Assn. v. Bhatt*, 133 Ohio St.3d 131, 2012-Ohio-4230, 976 N.E.2d 870, we publicly reprimanded an attorney who allowed his professional liability insurance to lapse without providing the required notice to his clients, neglected two client matters, causing one of them—a custody matter—to be dismissed, and failed to reasonably communicate with the affected clients. Likewise, in *Akron Bar Assn. v. Freedman*, 128 Ohio St.3d 497, 2011-Ohio-1959, 946 N.E.2d 753, we publicly reprimanded an attorney who failed to reasonably communicate with a husband and wife who sought his legal advice regarding the feasibility of filing bankruptcy personally or for their businesses, failed to inform the couple that he did not maintain professional liability insurance, and failed to advise them in writing that they might be entitled to a refund for all or part of

---

2. Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B)(1) and (2) are codified in Gov.Bar R. V(13), 140 Ohio St.3d CXXIV.

their flat fee if he failed to complete the contracted work. And in *Disciplinary Counsel v. Dundon,* 129 Ohio St.3d 571, 2011-Ohio-4199, 954 N.E.2d 1186, we publicly reprimanded an attorney who failed to reasonably communicate with a client, neglected the client's legal matter, and failed to return the client's $10,000 fee until he learned that another attorney had completed the representation for her—almost two years after the client had requested a refund.

{¶ 26} Here, the panel unanimously dismissed 8 of the 17 violations alleged against Shenise, and we dismiss one more. Given the misconduct that has been proven here, the applicable aggravating and mitigating factors, and the sanctions imposed in *Bhatt, Freedman,* and *Dundon,* we believe that a public reprimand is the appropriate sanction in this case. Furthermore, based on the dismissal of more than half the alleged violations, we find that only $4,000 of the $9,571.08 expenses incurred in connection with these proceedings should be taxed to Shenise.

{¶ 27} Accordingly, Larry D. Shenise is publicly reprimanded for the misconduct found herein. Costs in the amount of $4,000 are taxed to Shenise.

Judgment accordingly.

PFEIFER, O'DONNELL, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'CONNOR, C.J., and LANZINGER, J., dissent and would impose a suspension of two years, all stayed.

———————

Roderick, Linton, Belfance, L.L.P., and Robert M. Gippin; and Gibson & Lowry, L.L.C., and Sharyl W. Ginther, for relator.

Larry D. Shenise, pro se.