[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Oviatt,* Slip Opinion No. 2018-Ohio-5091.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-5091

DISCIPLINARY COUNSEL *v.* OVIATT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Oviatt,* Slip Opinion No. 2018-Ohio-5091.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct and the Rules for the Government of the Bar—Conditionally stayed six-month suspension.*

(No. 2018-0537—Submitted June 26, 2018—Decided December 20, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-013.

_____

**Per Curiam.**

{¶ 1} Respondent, Richard Ahlman Oviatt, of Cleveland, Ohio, Attorney Registration No. 0025563, was admitted to the practice of law in 1967.

{¶ 2} In June 2017, relator, disciplinary counsel, charged Oviatt with making improper statements impugning the integrity of judicial officers, breaching

the confidentiality of the disciplinary-grievance process, and other professional misconduct. Oviatt denied the charges, and the matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. Based on the evidence presented at the hearing, the panel dismissed one alleged rule violation, found that Oviatt had engaged in the remaining charged misconduct, and recommended that we impose a one-year suspension, with six months conditionally stayed. The board adopted the panel's findings of misconduct and recommended sanction, although it proposed different conditions on the stayed portion of the sanction. Oviatt objects to the board's findings of misconduct and the recommended sanction.

{¶ 3} For the reasons explained below, we overrule Oviatt's objections to the board's misconduct findings but sustain in part his objections to the recommended sanction. We conclude that a conditionally stayed six-month suspension is the appropriate sanction in this case.

**Misconduct**

{¶ 4} This attorney-discipline matter commenced after a court of appeals determined that Oviatt had not timely sought to revive a client's dormant judgment.

*The* Selwyn v. Grimes *case and related proceedings*

{¶ 5} In 1984, Oviatt represented John Selwyn in a civil case in which Selwyn alleged that Jeff Grimes had assaulted him with a beer bottle. In 1985, the trial court granted Selwyn a default judgment, and a few months later, Oviatt unsuccessfully attempted to execute the judgment. In 1987, Grimes filed for bankruptcy, and Oviatt, on behalf of Selwyn, initiated an adversary action that resulted in the bankruptcy court declaring Selwyn's judgment nondischargeable.

{¶ 6} According to Oviatt, Grimes was "uncollectible," and Oviatt and Selwyn thereafter decided to wait until Grimes had inherited money to make another attempt to collect the judgment. Pursuant to Ohio law in effect when Selwyn obtained his judgment—and as interpreted by the trial court presiding over

Selwyn's case—a judgment became dormant five years from the date of the judgment or the issuance of the last execution on it. After a judgment became dormant, a party could not enforce the judgment unless it was revived, and a party had 21 years from the date of dormancy to seek revival of the judgment.

{¶ 7} In 2012, Grimes's father died, and on June 4, 2012, Oviatt filed a motion to revive Selwyn's dormant judgment. In early 2014, the trial court determined that Oviatt had not properly served his June 4, 2012 motion and gave him the opportunity to refile it. On January 16, 2014, Oviatt refiled the motion, and the court revived the judgment. In doing so, the court determined that Selwyn's 1987 action in Grimes's bankruptcy proceeding constituted the last execution on the judgment. Therefore, the judgment became dormant in August 1992—five years after the bankruptcy order—and Selwyn had 21 years from that date—that is, until August 2013—to revive the judgment. *Selwyn v. Grimes*, Cuyahoga C.P. No. CV-84-082351 (Mar. 24, 2014). Because Oviatt filed his initial motion to revive on June 4, 2012, the trial court determined that Selwyn's attempt to revive the judgment fell within the 21-year statute of limitations and that Selwyn was entitled to $383,430.11—the 1985 judgment plus interest. *Id.*

{¶ 8} Grimes appealed, and the Eighth District Court of Appeals reversed. *Selwyn v. Grimes*, 8th Dist. Cuyahoga No. 101252, 2014-Ohio-5147. The court of appeals found that "Selwyn's adversarial action in the bankruptcy court was not an attempt at execution" but was merely an attempt to prevent the discharge of Selwyn's judgment against Grimes. *Id.* at ¶ 19. Accordingly, Selwyn's judgment went dormant in August 1990—five years after Selwyn first attempted to execute the judgment in 1985—and to be timely, Selwyn had to have sought revival of the judgment prior to August 2011. Because Selwyn did not file his initial motion to revive the judgment until June 4, 2012, the court of appeals determined that his motion "was untimely and the trial court erred in reviving the judgment." *Id.* at ¶ 21.

**{¶ 9}** The court of appeals also noted that because Oviatt had not properly served Grimes with his June 4, 2012 motion, Selwyn did not actually attempt to revive the judgment until he refiled the motion on January 16, 2014. The court of appeals concluded that when Selwyn refiled the motion in January 2014 to cure the jurisdictional deficiency, the refiling was outside the 21-year statute of limitations. *Id.* at ¶ 22-24. Oviatt sought review in this court, but we declined to accept jurisdiction of the appeal. *Selwyn v. Grimes*, 142 Ohio St.3d 1477, 2015-Ohio-2104, 31 N.E.3d 655.

**{¶ 10}** In 2015, Grimes filed a civil lawsuit against both Selwyn and Oviatt asserting claims of malicious civil prosecution, third-party legal malpractice, and other torts relating to their efforts to revive the 1985 judgment. *Grimes v. Oviatt*, Cuyahoga C.P. No. CV-15-848472. In a joint answer, Oviatt made several statements about the appellate judges who decided Grimes's appeal. For example, Oviatt stated that the issue whether his January 2014 refiled motion fell outside the statute of limitations "was contrived by the appellate judges to justify a decision favoring Grimes premised apparently upon outside influences and not premised upon the facts or the law" and that the judges "brought this non-issue into these appellate proceedings as a basis to rule in favor of Grimes for apparently undisclosed and non-legal reasons." Oviatt also asserted that the appellate judges "refused to address the determinative issues in the appellate proceedings, namely, * * * whether the Bankruptcy discharge proceeding August 17, 1987 was an execution." As noted above, however, the court of appeals clearly addressed that issue and specifically determined that "we decline to construe the bankruptcy court's decision as an execution." *Selwyn v. Grimes*, 2014-Ohio-5147, at ¶ 20.

**{¶ 11}** In his civil suit, Grimes also sought to disqualify Oviatt from serving as Selwyn's counsel, citing a conflict of interest. In response, Oviatt submitted a brief in opposition and attached a sworn statement from Selwyn defending Oviatt's representation of him. Selwyn's statement also referred to and attached portions of

a "disciplinary complaint" that Oviatt had filed with relator against the three appellate judges who decided Grimes's appeal.

{¶ 12} In the disciplinary complaint, Oviatt criticized the judges for ruling that his January 2014 refiled motion fell outside the statute of limitations. According to Oviatt, that issue was never briefed by the parties and the judges relied on that reasoning to "facilitate and substantiate a predetermined favorable ruling for Grimes." The judges' conduct, Oviatt alleged, "clearly indicate[d] impropriety and underscore[d] a *non-legal reason* for such a blatant perverse ruling." (Underlining sic.) Oviatt continued:

> The connection between Grimes and the Appellate Judges is clear; Grimes is a lifetime member, as was his father, of the iron workers union; the iron workers' union is embedded in Cuyahoga County democratic politics; and the three Judge Appellate Panel were all elected to the bench as democratic candidates. Recent criminal convictions of Cuyahoga County Common Pleas Court Judges Bridgett McCafferty and Steven Terry involved undue influence and corruption by Democratic Party Officials. The within situation is not something new, but merely an extension of past practices. * * * [T]he only viable reason judges would render such a Decision in this case is because judicial reasoning was replaced by undue influence and corruption.
>
>     * * *
>
> * * * There are reasons for everything and it is not because these judges are intellectually deprived. A conspiracy to pervert justice is confirmed when all three judges have put their names to this Decision.

Oviatt's disciplinary complaint also alleged that "[i]t is impossible to believe that this judicial decision is not the result of undue influence and corruption" and that "[t]hese Appellate Judges are very much aware as to how to use their vast power and the appellate process so that an opposing view is left without a forum to be heard and is thereby silenced."

{¶ 13} The board found that by making these statements about the appellate judges, Oviatt violated Prof.Cond.R. 8.2(a) (prohibiting a lawyer from making a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judicial officer). Citing *Disciplinary Counsel v. Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425—in which we adopted an objective standard to determine whether a lawyer's statements about a judicial officer were made with knowledge or reckless disregard of their falsity—the board concluded that Oviatt had no reasonable factual basis for his allegations. The board pointed to Oviatt's testimony admitting that he did not conduct any investigation before making the allegations, that he made the statements based solely on his reading of the court of appeals' opinion, and that he did not actually know why the judges ruled as they did. The board further noted that Oviatt did not appear to understand the appellate decision and that because the decision was his only basis for his accusations, he had no factual basis to make them—let alone a reasonable one.

{¶ 14} In addition, the board concluded that by filing a copy of his disciplinary complaint in the common pleas court—and thereby making it a public document—Oviatt violated Gov.Bar R. V(8)(A)(1) (requiring that all proceedings, documents, and deliberations relating to review, investigation, and consideration of a grievance shall be confidential prior to a determination of probable cause by the board, with limited exceptions not applicable here).

*Refusing to cooperate in the disciplinary process*

{¶ 15} Relator later commenced an investigation into Oviatt's conduct. Oviatt, however, refused to answer relator's inquiries about whether he carried malpractice insurance, claiming that relator lacked jurisdiction to inquire into that subject. Ultimately, Oviatt's refusal to respond to discovery requests about malpractice insurance resulted in this court holding him in contempt. *Disciplinary Counsel v. Oviatt*, 151 Ohio St.3d 1463, 2017-Ohio-9004, 87 N.E.3d 1263. Based on this conduct, the board found that Oviatt violated Prof.Cond.R. 8.1(b) and Gov.Bar R. V(9)(G) (both requiring a lawyer to cooperate with a disciplinary investigations).

*Oviatt's objections*

{¶ 16} Oviatt sets forth eight objections to the board's findings of misconduct.

{¶ 17} He first claims that the board failed to include "all relevant, material and determinative facts" in its report. Many of Oviatt's alleged "facts," however, are either his personal opinion or not supported by the record. For example, he asserts that the board "selectively neglect[ed] to acknowledge" that Grimes's "malicious lawsuit" against Selwyn and him "was filed for an improper purpose and was frivolous pursuant to [Civ.R. 11 and R.C. 2323.51]." But Oviatt failed to cite any portion of the record establishing that a court found Grimes's lawsuit to be frivolous. And even if the lawsuit was frivolous, Oviatt failed to establish why Grimes's frivolous conduct absolved Oviatt of any responsibility for his own behavior. Indeed, Oviatt's first objection fails to sufficiently explain why the board's omission of alleged "facts" had any impact on the ultimate outcome of this case or the board's specific findings of misconduct against Oviatt.

{¶ 18} In his second objection, Oviatt disputes a finding that the board never made. Specifically, Oviatt objects to the board's conclusion that he violated Prof.Cond.R. 8.1(a), which prohibits attorneys from making a false statement in

connection with a disciplinary matter. The board concluded that Oviatt violated Prof.Cond.R. 8.1(b) for knowingly failing to respond to a demand for information from a disciplinary authority—not Prof.Cond.R. 8.1(a).

{¶ 19} Oviatt's third and fourth objections challenge the board's findings that he violated Prof.Cond.R. 8.2(a) for making statements about appellate judges with knowledge or reckless disregard of their falsity and Gov.Bar R. V(8)(A)(1) for breaching the confidentiality of the disciplinary-grievance process. Oviatt primarily argues that he was merely complying with his client's instructions and therefore cannot be in violation of any ethical rules. Specifically, Oviatt claims that Selwyn believed that the appellate decision was the basis for Grimes's lawsuit and therefore Selwyn directed him to show that the decision was wrong and to include portions of the disciplinary complaint in the record. According to Oviatt, his "primary and paramount obligation" was to his client and his duty to Selwyn "supersede[d] all other rules." Oviatt also asserts that because Selwyn is not governed by the Rules of Professional Conduct, Selwyn had the right to make the disciplinary complaint public "without the consequence of discipline to himself or his attorney."

{¶ 20} As an initial matter, Oviatt has not established why it was necessary to impugn the integrity of appellate judges to defend against Grimes's lawsuit— especially if, as Oviatt claims, the lawsuit was frivolous. More importantly, lawyers may not engage in unethical conduct merely because their clients direct them to do so. Prof.Cond.R. 1.4(a)(5) requires a lawyer to "consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Ohio Rules of Professional Conduct," and pursuant to Prof.Cond.R. 1.16, Comment 2, a lawyer must ordinarily "withdraw from representation if the client demands that the lawyer engage in conduct that is illegal or violates the Ohio Rules of Professional Conduct or other

law." The fact that Oviatt may have been acting at Selwyn's direction is not a defense to the misconduct charges against him.

{¶ 21} In his fifth objection, Oviatt challenges the board's finding that he failed to cooperate in the disciplinary investigation. Oviatt argues that relator had "no jurisdiction to investigate" issues that were not first raised in a written complaint and that a complaint about his malpractice insurance "never came to Disciplinary Counsel in writing."

{¶ 22} Oviatt misconstrues the scope of relator's investigative authority. Gov.Bar R. V(9)(C)(1) provides that the "Office of Disciplinary Counsel and a certified grievance committee shall review and may investigate any matter filed with it or that comes to its attention and may file a complaint pursuant to this rule in cases where it finds probable cause to believe that misconduct has occurred." Here, relator asserts that Oviatt failed to properly serve Selwyn's initial motion to revive the judgment against Grimes and admitted to not keeping up with changes to the Civil Rules. Relator therefore inquired into whether Oviatt carried malpractice insurance and, if not, whether he had properly notified clients about his lack of malpractice insurance. Given the plain language of Gov.Bar R. V(9)(C)(1)—and relator's explanation for seeking information about Oviatt's malpractice insurance—Oviatt has not established that relator lacked investigative authority over this issue merely because it was not first raised in a written grievance. *See, e.g.*, *Akron Bar Assn. v. Tucker*, ___ Ohio St.3d ___, 2018-Ohio-2631, ___ N.E.3d ___, ¶ 4 (while investigating an unrelated grievance, the relator discovered that an attorney had misused funds in his client trust account and the relator commenced a separate investigation into the trust-account violations).

{¶ 23} Oviatt's sixth and eighth objections involve challenges to the board's evidentiary rulings. Oviatt argues that the board erred by refusing to allow him to introduce additional evidence and to cross-examine relator's attorney about the background of the *Selwyn v. Grimes* case and the meaning of the appellate decision.

**{¶ 24}** We review a panel's evidentiary rulings under an abuse-of-discretion standard. *See Disciplinary Counsel v. Gaul*, 127 Ohio St.3d 16, 2010-Ohio-4831, 936 N.E.2d 28, ¶ 49. The panel permitted Oviatt to introduce some evidence about the background of the *Selwyn v. Grimes* case, but the panel also cautioned Oviatt about extensively rehashing the facts of that matter. Oviatt has failed to establish why it was necessary to introduce more evidence or to cross-examine relator's counsel to understand the appellate decision or the issues in this case. And to the extent that Oviatt wanted to introduce this evidence to prove that the appellate decision was wrong, he cannot collaterally attack that court's legal reasoning in this attorney-discipline matter. *See Cincinnati Bar Assn. v. Hauck*, 148 Ohio St.3d 203, 2016-Ohio-7826, 69 N.E.3d 719, ¶ 28-29. Oviatt had the opportunity to raise his complaints about the appellate decision in his appeal to this court.

**{¶ 25}** Finally, in Oviatt's seventh objection, he disputes the finding that he did not understand the appellate court's decision. As noted above, the board concluded that Oviatt did not understand the decision and that because that decision was the sole basis for his allegations against the appellate judges, he lacked a reasonable factual basis for making the allegations. Oviatt now argues that the board is "misguided" and that "it is the Board which does not understand this decision."

**{¶ 26}** Whether Oviatt truly "understands" the appellate decision is beyond the scope of our review. He has, however, clearly misinterpreted it. Oviatt appears to believe that the court of appeals held only that Oviatt's January 2014 refiled motion to revive the judgment fell outside the 21-year statute of limitations. And Oviatt believes that this holding was wrong because the parties never raised that issue in their briefs. But the court of appeals also found that Oviatt's June 4, 2012 motion to revive was outside the statute of limitations. Indeed, the court expressly held: "To be timely, Selwyn's motion to revive had to be filed prior to August 19,

2011. Because it was purportedly filed in June 2012, it was untimely, and the trial court erred in reviving the judgment." *Selwyn v. Grimes*, 2014-Ohio-5147, at ¶ 21. Thus, even if the court of appeals had never addressed the January 2014 refiled motion, Selwyn would have lost the appeal.

{¶ 27} Oviatt's refusal to recognize the court of appeals' alternative holdings is additional evidence that he had no reasonable factual basis for accusing the appellate judges of political corruption, bias, and improper third-party influence. And given that he made no inquiry into the judges' integrity before making those accusations, no reasonable attorney would accept his allegations as true. *See Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, at ¶ 31 ("an attorney may be sanctioned for making accusations of judicial impropriety that a reasonable attorney would believe are false").

{¶ 28} Based on the foregoing, we overrule Oviatt's objections and adopt the board's findings of misconduct.

### Sanction

{¶ 29} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

*Aggravating and mitigating factors*

{¶ 30} As aggravating factors, the board concluded that Oviatt was "completely and utterly uncooperative throughout the entire process" and was "disrespectful of the disciplinary process." *See* Gov.Bar R. V(13)(B)(5). The board also concluded that he had a selfish motive. *See* Gov.Bar R. V(13)(B)(2). The only mitigating factor, according to the board, was Oviatt's clean disciplinary record. *See* Gov.Bar R. V(13)(C)(1).

{¶ 31} Oviatt objects to the board's aggravating factors. He argues that he had a good-faith basis for initially refusing to respond to relator's inquiries about

malpractice insurance but after this court held him in contempt, he promptly responded. He further notes that he answered all of relator's other questions and timely appeared for his disciplinary hearing. Oviatt also denies that he had a selfish motive because he was merely following his client's directions.

{¶ 32} We sustain these objections. The record does not sufficiently support the board's conclusion that Oviatt "was completely and utterly uncooperative" or that he "disrespected" the process. Oviatt refused to respond to a few of relator's inquiries based on his erroneous belief regarding relator's investigative authority, but he otherwise fully participated in the disciplinary proceedings. The fact that he contested the charges does not mean that he was also uncooperative "throughout the entire process," as the board found. Similarly, we find no support for concluding that Oviatt acted with a selfish motive. Selwyn testified in support of Oviatt, and the board did not specify what, if anything, Oviatt would have personally gained from his misconduct.

*Recommended sanction and Oviatt's objection*

{¶ 33} The panel recommended that Oviatt serve a one-year suspension, with six months stayed on conditions, including that he undergo a medical and psychological evaluation by the Ohio Lawyers Assistance Program ("OLAP") and pass the Multistate Professional Responsibility Examination ("MPRE"). The board agreed that Oviatt should be suspended for one year, with six months of the suspension conditionally stayed, but removed the requirement that he undergo an OLAP evaluation. Oviatt objects to the recommended sanction as "extreme and unjustified."

{¶ 34} To support the recommended sanction, the panel and board relied on two cases in which we disciplined attorneys for making similar accusations about judges. In *Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, we suspended an attorney for six months for improperly accusing appellate judges of prosecutorial bias and corrupting the law after the attorney received an adverse

12

decision. In *Disciplinary Counsel v. Shimko*, 134 Ohio St.3d 544, 2012-Ohio-5694, 983 N.E.2d 1300, we imposed a fully stayed one-year suspension on an attorney who accused a trial judge of dishonesty and improper motives in his rulings.

{¶ 35} The board concluded that Oviatt's accusations were more serious than those in *Gardner* and *Shimko* and that considering Oviatt's additional misconduct and the presence of additional aggravating factors, a more severe sanction was warranted. We disagree. Oviatt's accusations against the appellate judges are comparable to those in *Gardner* and *Shimko*. And as we concluded above, no aggravating factors exist. But a significant mitigating factor is present: Oviatt has an otherwise unblemished 51-year legal career. In contrast, the attorney in *Shimko* had a prior disciplinary record and the attorney in *Gardner* had been practicing for only eight years before the disciplinary complaint had been filed against him. And in light of Oviatt's testimony that his law practice has been "very minimal" since he started experiencing health problems in 2010—with this case taking up most of his time—we are not convinced that an actual suspension from the practice of law is necessary in this case. *Compare Disciplinary Counsel v. Miller,* 149 Ohio St.3d 731, 2017-Ohio-2821, 77 N.E.3d 979, ¶ 11 (noting that we have publicly reprimanded or imposed fully stayed suspensions on attorneys who committed isolated incidents of forgery or falsification in otherwise unblemished legal careers).

{¶ 36} Accordingly, we conclude that a fully stayed six-month suspension is the appropriate sanction in this case. And as recommended by the panel, we condition Oviatt's stayed suspension on his undergoing an OLAP evaluation. However, we reject the panel's and the board's recommended requirement that he take the MPRE.

## Conclusion

{¶ 37} For the reasons explained above, Richard Ahlman Oviatt is suspended from the practice of law for six months, with the entire suspension stayed

on the conditions that he (1) submit to an evaluation conducted by OLAP, (2) comply with any and all treatment recommendations resulting from the evaluation, and (3) engage in no further misconduct. If Oviatt fails to comply with any condition of the stay, the stay will be lifted and he will serve the full six-month suspension. Costs are taxed to Oviatt.

Judgment accordingly.

O'DONNELL and FISCHER, JJ., concur.

KENNEDY, FRENCH, and DEWINE, JJ., concur in judgment in part and dissent in part and would not require respondent to submit to an evaluation by the Ohio Lawyers Assistance Program.

O'CONNOR, C.J., dissents, with an opinion joined by DEGENARO, J., and would impose a suspension of one year with six months stayed on conditions.

_____

**O'CONNOR, C.J., dissenting.**

**{¶ 38}** Because I disagree with the majority's conclusion that a fully stayed six-month suspension is the appropriate sanction in this case, I dissent.

**{¶ 39}** "Unfounded attacks against the integrity of the judiciary require an actual suspension from the practice of law." *Disciplinary Counsel v. Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, ¶ 36, citing *Disciplinary Counsel v. West*, 85 Ohio St.3d 5, 706 N.E.2d 760 (1999), and *Columbus Bar Assn. v. Hartwell*, 35 Ohio St.3d 258, 520 N.E.2d 226 (1988). Furthermore, as the Board of Professional Conduct acknowledged, the misconduct engaged in here by respondent, Richard Ahlman Oviatt, is greater than the misconduct that was at issue in *Gardner*. Oviatt and Gardner both made improper statements about appellate judges who had ruled against their clients, but Oviatt's misconduct went further. Oviatt made public the materials from a disciplinary grievance that he had filed against the appellate judges, which led to a finding that he violated Gov.Bar R. V(8)(A)(1) (requiring confidentiality in grievance proceedings). When relator,

disciplinary counsel, began an investigation into Oviatt's conduct, Oviatt also refused to respond to discovery requests, which led to a finding that he violated Prof.Cond.R. 8.1(b) and Gov.Bar R. V(9)(G) (both requiring a lawyer to cooperate with a disciplinary investigation). Although Oviatt's attacks on the integrity of the judiciary are sufficient to support an actual suspension, these additional violations compound the need to impose an actual suspension from the practice of law.

{¶ 40} For these reasons, I disagree that a fully stayed six-month suspension is the appropriate sanction in this case. I would impose the board's recommended sanction, a one-year suspension, with six months stayed on the condition that Oviatt engage in no further misconduct. I would reject the panel's and the board's requirement that he pass the Multistate Professional Responsibility Examination, but I would add the condition as recommended by the panel that he submit to an evaluation by the Ohio Lawyers Assistance Program and comply with any and all treatment recommendations resulting therefrom.

DeGENARO, J., concurs in the foregoing opinion.

_____

Scott J. Drexel, Disciplinary Counsel, and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Richard Ahlman Oviatt, pro se.

_____